# IN THE COURT OF APPEALS OF IOWA

No. 23-1854
Filed February 5, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KEVIN LEE KELLEY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cedar County, Stuart P. Werling,

Judge.

        The defendant challenges the sufficiency of the evidence supporting his

conviction for operating while intoxicated, second offense.  **AFFIRMED.**

        Francis Hurley, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney

General, for appellee.

        Considered by Tabor, C.J., Ahlers, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**POTTERFIELD, Senior Judge.**

Kevin Kelley appeals his conviction for operating while intoxicated, second offense, arguing it is not supported by substantial evidence. While Kelley challenges "[w]hether evidence was sufficient to prove that [he] was intoxicated at the time he was driving," that is not what the jury was required to find. The jury was instructed the State had to prove (1) that Kelley operated a motor vehicle and (2) "[a]t the time [Kelley] was under the influence of alcohol or drugs or a combination of alcohol and drugs." "Jury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims." *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020). So, we consider whether there is sufficient evidence Kelley was under the influence of alcohol, drugs, or both.

We review "challenges to the sufficiency of the evidence for the correction of legal error." *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018). We affirm when the verdict is supported by substantial evidence. *Id.* "Evidence is substantial when the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *Id.* (citation omitted). In conducting our review, we do not resolve conflicts in the evidence, decide the credibility of witnesses, or weigh the evidence—those decisions are for the factfinder. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006). Instead, we consider the evidence in the light most favorable to the verdict, "including all reasonable inferences that may be fairly drawn from the evidence." *Banes*, 910 N.W.2d at 637.

A person is "under the influence" of alcohol, drugs, or both when the consumption "affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to lose control of bodily actions." *State v. Price*, 692 N.W.2d 1, 3 (Iowa 2005) (citation omitted). A person's "conduct and demeanor" are "important considerations in determining whether a person is 'under the influence.'" *Id.*

At trial, Police Officer Matthew Jennings testified about his interaction with Kelley on the evening of July 8, 2022. After pulling him over for a loud muffler and a malfunctioning taillight, Officer Jennings noticed Kelley's slurred speech and twitching hands. Officer Jennings suspected Kelley was under the influence of methamphetamine; he asked Kelley to show him inside his mouth and saw that Kelley was missing teeth and had white "heat" bumps on the back of his tongue—both common signs of methamphetamine use, according to Officer Jennings's testimony. When Officer Jennings asked Kelley about using methamphetamine, he initially responded that he was heavy into the drug many years before. He reported his shaking was due to nervousness. Officer Jennings asked Kelley to complete some field sobriety tests, and Kelley agreed. Kelley completed the first test, the horizontal gaze nystagmus, and showed no clues that he was impaired by alcohol.[1] His results from another test, the "lack of convergence" test, indicated he had recently used marijuana. So, Officer Jennings asked Kelley about his use, and Kelley admitted to smoking marijuana, claiming he last smoked it three or four

---

[1] Officer Jennings also administered the modified Romberg test—where an individual is asked to estimate when thirty seconds have passed—and Kelley was only off by one second, which is not a clue of impairment.

days earlier. According to Officer Jennings's testimony at trial, the result from the test indicated marijuana use within about four hours—not the four days claimed by Kelley. Next, Officer Jennings's administered the walk-and-turn test, explaining at trial that it "is a divided attention test, meaning we set them in a position, give them instructions, and when people are impaired under a controlled substance, they have a hard time listening to us and remembering what to do after we've instructed them." Scoring two of eight clues was enough to show impairment; Kelley scored six out of the possible eight clues.

While Officer Jennings conducted the field sobriety tests, a second officer, Charles Adolph, searched Kelley's car with Kelley's permission. During his search, Officer Adolph found what he believed to be a methamphetamine pipe that appeared to have burnt methamphetamine residue inside. Officer Jennings also believed the recovered pipe was a used methamphetamine pipe.[2] Once it was found, he again asked Kelley about his use of methamphetamine. Kelley admitted he smoked methamphetamine that day and stated he was done participating in field sobriety tests.

Kelley was taken to the local jail. While there, Kelley agreed to give a breath specimen to be tested for alcohol; his BAC was .00, as Officer Jennings expected. Next, Officer Jennings asked Kelley to give a urine sample that could be tested for illegal substances. Kelley initially indicated he would comply but stated he was unable to provide the sample. Over the next hour, Kelley drank ninety-six ounces of water. Claiming he was still unable to provide a urine sample, Kelley then

---

[2] There was no evidence that the substance was ever tested.

revoked his implied consent—accepting the administrative revocation of his license. *See* Iowa Code § 321J.9 (2022).

At trial, Kelley claimed that he was suffering from a diabetic episode during his interaction with Officer Jennings. He suggested the results of the various field sobriety tests could be explained by his medical condition and that it was possible he inaccurately admitted to using methamphetamine that day due to low blood sugar. He argues these possible alternative explanations mean the State's evidence is insufficient. *See State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) ("Substantial evidence 'means a person may not be convicted based upon mere suspicion or conjecture.'" (citation omitted).

But "the State need not discredit every other potential theory to be drawn from circumstantial evidence" for a conviction to be supported by substantial evidence. *Id.* at 57. The jury was free to accept or reject Kelley's alternative explanation for the otherwise incriminating facts. *See Blume v. Auer*, 576 N.W.2d 122, 125 (Iowa Ct. App. 1997). And, when reviewing for sufficient evidence, we broadly and liberally construe the findings of the factfinder in support of the verdict. *State v. Price*, 365 N.W.2d 632, 633 (Iowa Ct. App. 1985).

Considering Kelley's admission at the scene regarding his use of methamphetamine and marijuana, the pipe in his vehicle that appeared to have burnt methamphetamine, his performance on field sobriety tests, the heat bumps on his tongue, and his refusal to give a urine sample to be tested for illegal substances after drinking large quantities of water, substantial evidence supports

the jury's determination that Kelley was "under the influence."  So we affirm Kelley's conviction for operating while intoxicated, second offense.

**AFFIRMED.**